IN THE UNITED STATES DISTRICT COURT FOR MARYLAND
(Northern District)

| | | |
|---|---|---|
| GARY WILLIAMS, | * | |
| Plaintiff, | * | |
| v. | * | |
| MV TRANSPORTATION, INC., | * | Case No. 1:23-cv-00547-BAH |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant, MV Transportation, Inc. ("Defendant"), by and through its attorneys, Scarlett M. Corso and Goldberg Segalla, LLP, and pursuant to FED R. CIV. P. 56, files this Memorandum of Points and Authorities in Support of its Motion for Summary Judgment, and as reasons and grounds therefore, states as follows:

**I.      INTRODUCTION**

The case *sub judice* is a personal injury claim that arises out of a motor vehicle accident that Plaintiff alleges occurred on August 22, 2022 in the 1400 block of Fulton Avenue in Baltimore City, Maryland involving a motor vehicle operated by the Plaintiff and a motor vehicle owned by Defendant (the "Occurrence"). *See* ECF No. 4 at ¶¶3-6. Plaintiff claims substantial damages in his Complaint in the form of "serious physical injury, pain, mental distress, and inconvenience" sustained and demands judgment in excess of $75,000.00. *See id.,* at ¶¶9, 13. Accordingly, it is anticipated that Plaintiff will attempt to testify at trial that he sustained physical injuries, sought medical treatment and incurred medical expenses as a result of the Occurrence.

However, this Court's discovery deadline has expired and Plaintiff did not designate <u>any</u> expert witnesses pursuant to this Court's Scheduling Order or Federal Rule 26, and has <u>admitted</u> he does not

intend to call any expert witnesses at trial. It is, thus, anticipated that Plaintiff will attempt to testify as to (1) the causal connection between his alleged injuries and Defendant's negligent acts with respect to the Occurrence and (2) the fairness, reasonableness and necessity of medical treatment and bills as they relate to his purported injuries, without medical expert testimony to establish same. As Plaintiff has no medical training or experience, he cannot establish the causal connection between his alleged injuries and the Occurrence. Without the requisite medical testimony establishing causation, Plaintiff cannot succeed on his negligence claim. Defendant, thus, is entitled to judgment as a matter of law.

## II.     PROCEDURAL HISTORY

On or about January 11, 2023, Plaintiff filed the subject Complaint against Defendant in the Circuit Court for Baltimore City. *See* ECF No. 4. On February 28, 2023, Defendant filed its Notice of Removal, thereby removing the case to the United States District Court for the District of Maryland, and then timely filed its Answer. *See* ECF Nos. 1-2, 9. On March 23, 2023, this Court issued its Scheduling Order, which provided for a deadline of May 22, 2023 for Plaintiff's Rule 26(a)(2) disclosures and a **discovery deadline of August 7, 2023**. *See* ECF No. 10.

Plaintiff did not disclose experts in compliance with Rule 26(a)(2) or the Court's Scheduling Order on or before May 22, 2023. Specifically, prior to May 22, 2023, Plaintiff never provided Defendant, or any representative thereof, with any documentation pertaining to his alleged medical treatment necessitated by the Occurrence, failed to identify the names or qualifications of any expert witnesses, and failed to identify the substance of the findings and opinions of any intended expert witnesses or the grounds for each opinion held by each intended expert witness.

On June 2, 2023, Plaintiff's counsel provided Defendant with a, "copy of [Plaintiff's] medical bills and records…total[ling] $6,274.93" consisting of a singular medical bill pertaining an emergency room visit at University of Maryland Medical Center Midtown Campus on August 24, 2022, and medical records

and bills pertaining to medical treatment undergone with Maryland Physicians Associates/Maryland Healthcare Clinics from August 27, 2022 through September 22, 2022. *See* ECF No. 20, at Exhibit C.

On June 21, 2023, after the parties engaged in communications pursuant to Local Rule 104 and the Court's Letter Order pertaining to same to resolve the Plaintiff's failure to comply with Rule 26(a)(2), Defendant filed a Motion in *Limine* to preclude Plaintiff from introducing any expert opinion testimony and related information, including any medical records and bills, into evidence and at trial in this matter. *See* ECF No. 20. Plaintiff never responded Defendant's Motion in *Limine.*

On July 11, 2023, Plaintiff's counsel advised the Court, "Plaintiff does not intend to call any expert witnesses, making the Motion moot." Consequently, on July 12, 2023, the Court issued an Order denying Defendant's Motion in *Limine* without prejudice as moot. *See* ECF No. 24.

On August 4, 2023, Plaintiff served his Answers to Defendant's Interrogatories. (*See* Plaintiff's Answers, attached hereto as Exhibit A). Plaintiff admitted in his Answers, again, that he "is not calling any expert witnesses" "at the trial of this matter." (*See* Ex. A, at No. 14).

On August 7, 2023, the discovery deadline expired. As of that date, Plaintiff had not yet served any Responses to Requests for Production of Documents. On August 8, 2023[1], undersigned counsel took Plaintiff's deposition. (*See* Excerpts of Plaintiff's Deposition Transcript, attached hereto as Exhibit C).

On August 9, 2023, <u>without the consent of undersigned counsel</u>, Plaintiff latently served his Responses to Requests for Production of Documents. Plaintiff did not produce any additional medical documentation that had not been produced on June 2, 2023. Specifically, although requested to produce the following, he did not produce any reports containing the findings of any medical treatment experts and did not produce medical records from any health care provider who had provided him any form of medical treatment, diagnosis, or evaluation, for the 10 years prior to the Occurrence.

---

[1] Due to difficulties in obtaining a mutually available date for Plaintiff's deposition, both counsel consented to scheduling Plaintiff's deposition after the expiration of the discovery deadline.

37407048.v1

Therefore, discovery has closed and Plaintiff will not have any medical experts at trial to testify regarding (1) the causal connection between his alleged injuries and the Occurrence, or (2) the fairness, reasonableness and necessity of medical treatment and bills as they relate to his purported injuries. Moreover, as Plaintiff has confirmed he is not designating any expert witnesses, it is anticipated Plaintiff will attempt to rely solely upon his own testimony to present medical evidence.

### III. STATEMENT OF UNDISPUTED MATERIAL FACTS

**Plaintiff's Answers to Defendant's Interrogatories:**

Plaintiff's Answers to Defendant's Interrogatories were, by and large, grossly insufficient. (*See* Ex. A; *see also,* August 8, 2023 Email to Plaintiff's Counsel, attached hereto as Exhibit B). Of relevance, Interrogatory No. 17, asked Plaintiff, *inter alia,* to "state with precision the nature and location of all bodily injuries allegedly sustained" "as a result of the alleged occurrence." (*See* Ex. A). In his Answer, Plaintiff failed to state whether his alleged injuries are temporary or permanent, and he failed to describe any current symptoms allegedly related to the Occurrence, and he simply referred Defendant to "medical records attached with his Responses to Requests for Production of Documents," which had not been served. (*See id.*). Similarly, Interrogatory No. 18 asked Plaintiff to describe all current symptoms related to the Occurrence and he, again, provided the insufficient Answer of referring Defendant to "Plaintiff's "medical records attached with his Responses to Requests for Production of Documents," which had not been produced or served. (*See id.*).

Interrogatory No. 19 asked Plaintiff, *inter alia,* to state the names and addresses of all physicians and medical providers who treated him as a result of the Occurrence and who treated him within 3 years prior to the Occurrence. (*See id.*). Plaintiff's Answer was, again, insufficient as it, again, referred Defendant to Plaintiff's "medical records attached with his Responses to Requests for Production of Documents," which had not been produced or served. (*See id.*). Plaintiff also identified that he, "occasionally receives

4

medical treatment from the Wellness Center at the Maryland Live Casino," but no address was provided and no documentation pertaining to this ongoing medical treatment was produced. (*See id.*; *see also,* Ex. B).

Plaintiff was asked in Interrogatory No 20, *inter alia*, to identify all physicians, hospitals and medical care providers who provided him with medical treatment for the 10 year period prior to the Occurrence, as well as that subsequent to the Occurrence, including the dates of the treatment and reasons for same. (*See id.*). He gave the same insufficient Answer of referring Defendant to Plaintiff's "medical records attached with his Responses to Requests for Production of Documents," but also admitted he underwent brain surgery at Johns Hopkins Hospital with Ben Carson, MD. (*See id.*). No dates for this surgery were provided or no additional related medical treatment were identified. (*See id.*). In Interrogatory No. 21, Plaintiff was asked, *inter alia,* whether he claimed any permanent or continuing injuries as a result of the Occurrence and he, again, failed to Answer this Interrogatory, again referring Defendant to Responses to Requests for Production of Documents not yet served. (*See id.*).

In Interrogatory No. 22, Plaintiff was asked, *inter alia,* whether he claimed this Occurrence aggravated a pre-existing condition and to provide the full details of each injury alleged if so. (*See id.*). Interrogatory No. 23 asked Plaintiff, *inter alia,* whether he "ever injured or hurt or experienced any pain or difficulty with the parts of your body which you allege you injured in the subject occurrence prior or subsequent to the date of the occurrence" and if in the affirmative, to "state the full details regarding how each such injury was received or how the pains or difficulties began, the dates thereof, the names and addresses of all physicians and hospitals that treated or examined you for said injuries, pain or difficulty and the dates of any lost time from work as a result of each injury or episode of pain and describe the subsequent difficulty and the number of times it occurred." (*Id.*). Plaintiff provided the same insufficient

5

Answer to these Interrogatories, referring Defendant to Responses to Requests for Production of Documents not yet served. (*See id.*).

Interrogatory No. 24 asked Plaintiff to identify whether he had, "ever had or suffered from any disease, sickness, infirmity (other than of a routine nature) or personal injury other than sustained in the occurrence here involved. If so, describe the disease, infirmity, injury, etc., and state how and when received, and the name and address of the persons causing the same, and the doctors or hospitals which examined or treated you." (*Id.*). Plaintiff answered he, "received a series of brain surgeries between the ages of 3-29 at John's Hopkin's Hospital for a Hydrocephalus Shunt. Plaintiff also has epilepsy…" (*Id.*).

**Plaintiff's Deposition Testimony:**

During his deposition, Plaintiff confirmed that a photograph obtained of his vehicle following the Occurrence, fairly and accurately depicted the damage sustained to his vehicle as a result of the Occurrence, i.e. scrapes on the driver's side front corner bumper. (*See* Ex. C, at p. 41:1-9; *see also,* Deposition Exhibit 5). Plaintiff testified that, "like the day afterwards, that's when [he] started feeling all types of pain [which is when he] went to the hospital… [as his] left side hurt." (*See* Ex. C, at pp. 64:15-65:4). He stated that his left shoulder, left arm, left side, and left leg hurt as a result of the Occurrence, and that he also had a headache. (*See id.,* at p. 67:1-7). Plaintiff was asked about his medical treatment with Maryland Physicians Associates, which stated Plaintiff, "had a problem with [his] left shoulder prior to this [Occurrence], which had been exacerbated as a result of the [Occurrence]." (*Id.,* at p. 68:8-19; *see also,* Initial Visit Record, attached hereto as Exhibit D). Plaintiff stated he, "did not remember saying that" to his physicians. (*See id.*). He then recanted and admitted that, with respect to a pre-existing condition of "chronic pain in [his] left shoulder," "[w]hen I told the doctor that before, that wasn't…[because] of the [Occurrence]. That was another situation…with the accident that made me hurt even more." (*See id.,* at pp. 69:20-71:8). Plaintiff claimed that his, "left arm is **still hurting**" as a result of the Occurrence, "still hurts today… [he takes] some

of the medication that [he] was prescribed for pain at night" and tries, "stretching it out and exercising it to try to just increase the range of motion." (*See id.,* at pp. 89:12-90:7) (emphasis added).

Plaintiff was also asked about his prior motor vehicle accident history. (*See id.,* at pp. 74:20-75:1). He testified he was involved in a motor vehicle accident on the same street as the Occurrence, "a couple of years ago," where his "car was totaled, and [he] was knocked out," "knocked unconscious," confirming that "went through medical treatment and stuff like that" at "Maryland General" hospital, i.e. UMMC, and exclaiming that he, "could have been killed" since his "car was totaled with [him] inside it." (*See id.,* at p. 75:2-76:9; 88:6-15). He also testified he was in a prior motor vehicle accident in April 2022. (*See id.,* at p. 77:12-18). Upon further examination, Plaintiff corrected his testimony, admitting that, in accordance with a correlating Facebook post, the severe motor vehicle accident in which he was knocked out occurred on April 26, 2022, **only 6 months prior to the Occurrence.** (*See id.,* at pp. 92:7-94:5). He then showed a photograph on his phone, which he confirmed accurately depicted the damage sustained to his vehicle as a result of the April 26, 2022 motor vehicle accident. (*See id.,* at pp. 94:19-95:22; *see also,* Photograph from Plaintiff's Deposition, attached hereto as Exhibit E). Plaintiff did not remember "how long [he] was in therapy for that [April 26, 2022 motor vehicle accident], but…was just in a lot of pain…[and] went to the hospital." (*See* Ex. C, at p. 96:1-12).

Plaintiff was, further, asked about his prior medical history. He confirmed he "had brain surgery at Johns Hopkins within the last 10 years," indicating that "other problems persist like seizures and everything[,] [t]hen a brain tumor operation." (*See id.,* at pp. 82:9-83:19). Plaintiff was asked, "did you suffer from headaches as part of the brain surgeries that you had to undergo?" to which Plaintiff replied, "I don't know where the headaches came from…" (*See id.,* at p. 84:13-20). When asked, "would it be accurate to say that you did experience headaches in connection with the brain surgeries that you underwent?" in

7

response, he stated, "[s]ometimes." (*See id.,* at pp. 84:21-85:3). He, further, described undergoing more recent medical treatment "in [his] 20's" at Sinai Hospital for migraine headaches[2]. (*See id.,* at p. 86:1-19).

## IV. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court has ruled that when these elements are met, the granting of summary judgment is mandatory. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

Discussing when summary judgment is appropriate, the Fourth Circuit explained, "summary judgment should be granted in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." *Miller v. FDIC*, 906 F.2d 972, 973-74 (4th Cir. 1990). Not just any factual dispute, even if genuine, will defeat a motion for summary judgment; a motion for summary judgment is properly granted so long as there are no "material" disputes of fact. As Justice White explained that "[b]y its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2510 (1986) (emphasis in original).

A factual dispute is material only when the resolution of that dispute might affect the outcome of the case. *Id.* "[I]rrelevant or unnecessary" factual disputes are insufficient to permit a question to go to the jury. *Id.* Where parties agree upon or stipulate to the facts, summary judgment is especially appropriate. 10A A. Wright, C. Miller, *et al.*, *Federal Practice & Procedure*, § 2725 at 409 (3d ed. 1998).

Where no dispute of material facts exists, summary judgment should be granted if the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court's inquiry is whether "legal

---

[2] For context, Plaintiff is currently 39 years old. (*See* Ex. C, at p. 9:19-21).

theory or doctrine supports the movant's position that judgment should be entered. *Wright & Miller, supra*, § 2725 at 439. Of course, the court is not confined solely to the legal theories and doctrines advanced by the moving party. *Id.*

In determining whether the moving party is entitled to summary judgment, the court must view the evidence in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1386 (1986). If even after applying that standard, no material dispute of fact exists and the moving party is entitled to judgment as a matter of law, the court must grant the motion. *See Celotex*, 477 U.S., at 322, 106 S. Ct., at 2552.

It is well-settled that federal courts apply the substantive law of the forum state when adjudicating cases brought under the federal court's diversity jurisdiction. *See Talkington v. Atria Reclamelucifiers Fabrieken BV,* 152 F.3d 254, 260 (4th Cir. 1998). Thus, in a diversity action such as this, where the case was removed to the United States District Court for the District of Maryland, the choice of law rules of the forum state of Maryland apply. *See LaChance v Service Trucking, Co.*, 215 F.Supp. 162, 164 (D.Md. 1963). Maryland follows the *lex loci delictus* principle, in determining which jurisdiction's law applies to tort actions. *See Chambco v. Urban Masonry Corp*., 338 Md. 417, 659 A.2d 297, 299 (1995). Maryland law applies to Plaintiff's negligence claim because the Occurrence took place in Maryland.

## V.     ARGUMENT

In order to recover on a negligence claim, the plaintiff must prove that (1) the defendant was under a duty to protect him from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss and (4) that the injury or loss proximately resulted from the defendant's breach of that duty. *See Pulliam v. Motor Vehicle Admin.,* 181 Md. App. 144, 153 (2008). "Negligence is not actionable unless it is a proximate cause of the harm alleged to be a proximate cause of an injury." *Pittway Corp. v. Collins*, 409 Md. 218, 243 (2009). To be considered a proximate cause of the injury, the negligence must

be (1) a cause in fact, and (2) a legally cognizable cause. *Hartford Ins. Co. v. Manor Inn*, 335 Md. 135, 156—57 (1994) (referencing *Atlantic Mut. v. Kenney*, 323 Md. 116, 127 (1991)).

"In many contexts, including those in which the injuries asserted are medical in nature, expert opinion is critical to establish causation." *Neal v. United States,* 599 F.Supp. 3d 270, 291 (2022). "If an issue requires expert testimony and a plaintiff fails to introduce expert testimony, then the plaintiff has failed to provide sufficient evidence to establish negligence and the defendant is entitled to judgment as a matter of law." *See Hinson v. Md. Transit Admin. (MTA) Rail*, Civil Action No. DKC 16-0792, 2017 U.S. Dist. LEXIS 201606, at *8 (D. Md. Dec. 6, 2017).

> In *Wilhelm v. State Traffic Safety Comm'n*, 230 Md. 91 (1962), the Court of Appeals stated that
>
> [t]here are, unquestionably, many occasions where the causal connection between a defendant's negligence and a disability claimed by a plaintiff does not need to be established by expert testimony…[such as] when the disability develops coincidentally with, or within a reasonable time after, the negligent act, or where the causal connection is clearly apparent from the illness itself and the circumstances surrounding it, or where the cause of the injury relates to matters of common experience, knowledge, or observation of laymen… However, where the cause of an injury claimed to have resulted from a negligent act is a complicated medical question involving fact finding which properly falls within the province of medical experts (**especially when the symptoms of the injury are purely subjective in nature**, or where disability does not develop until some time after the negligent act), **proof of the cause must be made by such witness**.
>
> *Id.* at 100 (emphasis added).

The extent of disability, permanency of injury, likely duration of symptoms, ability to work post injury, and future employability are also within the purview of a medical expert's testimony in a personal injury case. *See Singleton v. Travers,* 144 Md. App. 696, 709-10 (2002). Additionally, in order to introduce evidence of medical expenses, such as medical bills, expert witness is required to show that said medical bills are fair, reasonable and necessary[3].

---

[3] A plaintiff's testimony in regard to medical expenses is not admissible unless there has been a proper foundation laid for such evidence establishing necessity for the medical services and the reasonableness of such charge. *See Wright v. Hixon,* 42 Md. App. 448, 456-57 (1979); *Wolf v. Levitt & Sons, Inc.,* 267 Md. 623, 631 (1973). Alternatively stated, in order for the amount paid or incurred for medical care to be admissible as evidence of special damages, the plaintiff

In *S.B. Thomas, Inc. v. Thompson*, the Appellate Court of Maryland held that "the causal relationship will almost **always** be deemed a complicated medical question and expert medical testimony will almost **always** be required when **one** or more of the following circumstances is present:"

> 1) some significant passage of time between the initial injury and the onset of the trauma; 2) the impact of the initial injury on one part of the body and the manifestation of the trauma in some remote part; 3) the absence of any medical testimony; and 4) a more arcane cause-and-effect relationship that is not part of common lay experience (the ileitis, the pancreatitis, etc.)

114 Md. App. 357, 381-382 (1997) (emphasis added); *see also, Neal,* 599 F. Supp. 3d, at 293. The Appellate Court of Maryland held that where the cause-and-effect relationship between a car accident and soft-tissue neck injury was not obvious enough to be considered "within the common knowledge of laymen," *even* when the plaintiff complained of the injury immediately after the accident, summary judgment was still appropriate[4]. *See id.,* at 383-385; *see also, Desua v. Yokim*, 137 Md. App. 138, 147-149 (2001).

Subsequent cases have, likewise, found that summary judgment is appropriate where plaintiffs fail to provide a medical expert on specific causation in order to substantiate their cause of action. In *Aventis Pasteur, Inc. v. Skevofilax,* plaintiffs alleged filed a medical malpractice action against defendants alleging vaccinations administered to the plaintiffs' minor child had caused him to become autistic. 396 Md. 405, 408-410 (2007). After the plaintiffs failed to produce expert testimony on the issue of causation, the trial judge granted defendant's motion for summary judgment. *See id.,* at 411-416. In affirming the trial judge's

---

must provide expert medical testimony that the medical bills are fair, reasonable and necessary. *See Desua, supra,* 137 Md. App. at 143 ("[plaintiff] needed to provide expert testimony to introduce her medical bills. In order for the amount paid or incurred for medical care to be admissible as evidence of special damages, there ordinarily must be evidence that the amounts are fair and reasonable"); *Metropolitan Auto Sales v. Koneski,* 252 Md. 145, 154 (1969) (plaintiff is required to prove that their medical treatments were "necessary").

[4] In so finding, the Appellate Court of Maryland noted the many possible causes of an alleged injury, the disparity between the insignificant damage to the vehicle and the sizeable personal injury claim, and the passing of 18 days between plaintiff's emergency room visit and her treating physician visit. *See Desua* 114 Md. App., at 141, n.2.

11

ruling, the Supreme Court of Maryland opined that (1) causation was an essential element to the plaintiffs' claim, (2) given the complexity of that medical question, a medical expert would be necessary to prove specific causation within a reasonable degree of scientific certainty, and (3) causation was simply not demonstrated on the record as plaintiffs had not identified any expert opinion supporting their claim of causation. *See id.,* at 441-443.

This ruling in *Aventis Pasteur* was, more recently, cited with approval by the Supreme Court of Maryland in *Rodriguez v. Clarke*, 400 Md. 39 (2007). There, the Supreme Court of Maryland noted that expert witnesses play "a pivotal role" in medical malpractice actions in which- similar to negligence actions- the plaintiff bears the burden of proof to demonstrate a defendant's breach of a standard of care is "a direct cause of the injury." *See Rodriguez,* 400 Md., at 71-72. It then granted the defendant's motion for summary judgment on the basis that plaintiffs had failed to adduce expert testimony on causation or breach of the standard of care. *See id.* The Supreme Court of Maryland, further, noted that the plaintiffs' failure to designate witnesses in any pleading, was "further exacerbated by their repeated reference to their deficient [filing] in their answers to interrogatories…" *Id.,* at 74.

Subsequent decisions applying the principles of *S.B. Thomas, Wilhelm* and *Aventis Pasteur* in various contexts, including negligence claims, are "legion." *See Neal*, 599 F. Supp. 3d, at 292. In *Neal,* the plaintiff had filed a claim of professional negligence against the defendant alleging its employee had violated her privacy during a medical examination, and she sought economic damages and non-economic damages for emotional distress and exacerbation of existing medical conditions. *See id.,* at 270, 283. The defendant had sought, during discovery, a variety of documents and information related to Neal's damages and injuries, and Neal provided an "expansive" description of her injuries in her deposition and answers, but sparse documentation supporting same. *See id.,* at 284. She then failed "to designate any experts or offer any expert testimony or material as to causation or any other issue." *Id.,* at 285. In *Neal,* acknowledging

12

*Desua,* this Court noted, "that a 'disparity between the damage to appellant's vehicle and the amount of her personal injury claim' increases the necessity of an expert to establish causation." *Id.,* at 294. This Court found that Neal's "vague assertion" that her symptoms of injury were related to the subject incident solely because they occurred "immediately after" were insufficient to overcome the need for expert testimony, which the Court found "particularly true considering that plaintiff ha[d] introduced virtually no medical information or records as to her conditions." *See id.,* at 295. Given plaintiff claimed causation as to multiple physical conditions, including "neurological issues" and "general body illness," to permit Neal's case to go to trial without any expert testimony as to causation, "would permit the rankest kind of guesswork, speculation and conjecture." *See id.,* at 296 (*quoting Wilhelm*, 230 Md. at 101). This Court ruled Neal had offered "no persuasive argument as to why she should be given a second bite at the expert apple" and granted summary judgment in defendant's favor as to the negligence claim. *Id.,* at 301.

Even more recently and directly on point with this case, again guided by *S.B. Thomas,* this Court granted a defendant's motion for summary judgment in *Mijares v. Walmart, Inc.,* No. 8:19-cv-01804-PWG, 2020 U.S. Dist. LEXIS 162886 (D. Md. Sep. 8, 2020). In *Mijares*, the plaintiff allegedly injured the left side of her body at a Walmart store, but waited several days to undergo treatment at the emergency room and then did not undergo physical therapy until a month later. *See* 2020 U.S. Dist. LEXIS, at *2. In her discovery responses, plaintiff alleged she suffered Bell's Palsy on the left side of her face and a frozen left shoulder as a result of the incident, and claimed she had continued to permanently suffer from headaches and left sided injury; however, she failed to designate any expert witness who could opine to a reasonable degree of certainty in support of those claims. *See id.,* at 2-4. Defendant moved for this Court to grant summary judgment, arguing plaintiff had failed to provide evidence she had suffered any injury related to the incident. *See id.,* at 5. In her opposition, plaintiff argued that she had established a causal connection between her injuries and the incident by her own testimony and through the medical records she had

13

provided documenting same, and that her complaints did not involve a medical question so medical expert testimony was not required. *See id.,* at 7-8. As with *Neal,* this Court found the causal connection between Mijares' claimed injuries and the incident presented a complicated medical question, requiring expert testimony. *See id.,* at 9. Additionally, it noted there was a lack of medical professional opinion diagnosing her alleged permanent injuries, that plaintiff had delayed seeking medical treatment, and that it was <u>not</u> obvious to a layperson that making contact with cardboard boxes would result in the injuries plaintiff alleged. *See id.* This Court found that because Mijares had failed to "present any expert testimony connecting her injuries to the incident, a jury would be left to speculate about causation" and Mijares had, thus, "failed to carry her burden of showing there is a genuine dispute of material fact regarding causation, which [was] an essential element of her claim." *Id.,* at 10.

In the case *sub judice,* there is no dispute that the cause of Plaintiff's "serious physical injury, pain, mental distress, and inconvenience" allegedly sustained as a result of the Occurrence involves a complicated medical question for which expert testimony is required. *See* Complaint, at ¶9. Plaintiff confirmed that he did not experience pain immediately after the Occurrence and did not undergo any emergency medical treatment until August 24, 2022, two days after the Occurrence. *See* Ex. C, at 64:15-65:4. Aside from the delay in treatment, Plaintiff also failed to provide any medical records in support of any alleged emergency medical treatment. In fact, the only medical records provided by Plaintiff pertaining to his alleged injuries from the Occurrence are those from Maryland Physicians Associates/Maryland Healthcare Clinics ("MPA"), which confirm Plaintiff initially presented for treatment on August 27, 2022, 5 days after the Occurrence, having injured "his cervical spine, right rib cage, left shoulder, left trapezius muscle and left upper arm" and complaining of pain and "post-traumatic headaches." (*See* Ex. D). However, he did not disclose to MPA that he had a history of brain surgeries. (*See id.*). Moreover, in deposition Plaintiff did not testify he had injured his neck (cervical spine) or right rib cage, but rather only

14

testified he had injured his left shoulder, left arm, left side, and left leg as a result of the Occurrence. (*See* Ex. C, at p. 68:8-19). Given that Plaintiff's subjective complaints of pain in his deposition contrast with those documented, medical expert testimony is required to establish same.

To the extent Plaintiff has consistently alleged he injured his left side as a result of the Occurrence, expert testimony is still required to prove causation because of the complexity of that injury. Plaintiff admitted that he had pre-existing chronic left shoulder pain, caused by the prior April 26, 2022 motor vehicle accident and that this was allegedly exacerbated by the subject Occurrence (*See* Ex. C, at 69:20-71:8; *see also,* Ex. D). Additionally, Plaintiff testified that he experienced headaches as a result of the Occurrence, but also confirmed he had previously undergone numerous brain surgeries at Johns Hopkins Hospital, had treated at Sinai Hospital for headaches within the last 10 years, and had been "knocked unconscious" in the April 26, 2022 motor vehicle accident. (*See* Ex. C, at 82:9-83:19; 84:21-85:3; 86:1-19; 92:7-94:5). Beyond that, Plaintiff has insinuated he has been permanently injured from the Occurrence, claiming he was still experiencing left shoulder pain at the time of his deposition. (*See id.,* at 89:12-90:7). It is well beyond the experience of a common lay man to be able to distinguish the cause-and-effect between the soft-tissue injuries that may have resulted from this Occurrence, and those which were pre-existing, and which of any of these resulting or pre-existing conditions are permanent in nature. *See S.B. Thomas,* 114 Md. App., at 381-382; *see also, Neal,* 599 F. Supp. 3d, at 293. The complexity of the medical question as to the causation of Plaintiff's alleged injuries is further complicated by the fact that there was minimal property damage sustained to his vehicle as a result of this Occurrence, particularly when compared to the extraordinary property damage sustained to his vehicle in the prior April 26, 2022 motor vehicle accident, intensified by the fact that Plaintiff was unable to articulate the nature and length of medical treatment undergone as a result of the April 26, 2022 motor vehicle accident. (*See* Ex. C, at 96:1-12; *see also* Ex. 5 to Ex. C; *see also,* Ex. E). *See Neal*, 599 F. Supp. 3d, at 294.

Beyond the absence of filing any designation of expert witness to support a theory of causation or damages, Plaintiff's failure has been, as with *Rodriguez,* further exacerbated by his repeated references to his deficient discovery responses. *See* 400 Md., at 74. In Defendant's written discovery requests, Plaintiff was asked to articulate the details of the injuries sustained from this Occurrence and the permanency of those alleged injuries, as well as the details and injuries for his pre-existing medical and motor vehicle accident history, and to provide documentation in support of same. (*See* Ex. A). Plaintiff simply chose not to help his own case and provide this information, without any substantial justification. (*See* Ex. A and B). Likewise, Plaintiff could have proven causation of his injuries by providing an expert opinion in support thereof- and he was given a *reminder and opportunity* to do so by undersigned counsel before Defendant filed its Motion in *Limine*. Even after Defendant filed its Motion in *Limine,* Plaintiff failed to file any Opposition to same, choosing, instead, to stipulate to the Court that he was not designating any expert witnesses. Therefore, the *one* way the case *sub judice* is unique from its preceding progeny is that Plaintiff did not just simply fail to timely or sufficiently designate expert witnesses: he **deliberately chose not to.** (*See* Ex. A).

Here, Plaintiff has no medical training or experience and is not qualified to render an expert opinion as to the causal connection between his injuries and damages allegedly sustained from the Occurrence and the Defendant's alleged negligent act(s). Despite this, it is anticipated that, during the course of trial, the Plaintiff will take the stand, and during his testimony, attempt to establish the causal relationship of his alleged injuries and damages, without the support of any expert witness testimony. However, given the complex nature of the subjective injuries Plaintiff alleges he sustained as a result of the Occurrence, which were not clearly apparent from the Occurrence itself, and his significant, relevant prior medical and claims history, Plaintiff must provide expert testimony to substantiate his burden of proof as to causation. *See Wilhelm*, 230 Md., at 100. Given

the lack of medical professional opinion diagnosing Plaintiff with any allegedly permanent injuries as a result of the Occurrence, the delay of Plaintiff in seeking medical treatment, Plaintiff's failure to provide documentation supporting his claim for emergency medical treatment or his prior medical history, and the fact that it is not obvious to a lay person how this Occurrence would have resulted in the injuries Plaintiff alleged (particularly when compared to the severity of the prior April 26, 2022 motor vehicle accident), Plaintiff has left the jury with no choice but to speculate about causation. *See S.B. Thomas,* 114 Md. App., at 381-382; *see also, Mijares v. Walmart, Inc.,* 2020 U.S. Dist. LEXIS, at 9-10. Because causation is an essential element of Plaintiff's claim and he has failed to identify a necessary medical expert in order to prove same within a reasonable degree of certainty and/or to prove that the cause of his alleged injuries resulted from Defendant's negligence, summary judgment is appropriate as a matter of law.

**WHEREFORE,** for the foregoing reasons, Defendant, MV Transportation, Inc., asks this Honorable Court to grant the foregoing Motion for Summary Judgment and grant such further relief as justice requires.

> Respectfully submitted,
>
> *[signature]*
>
> Scarlett M. Corso (#30017)
> Pascal Moleus (#27314)
> GOLDBERG SEGALLA, LLP
> 111 S. Calvert Street, Suite 2000
> Baltimore, MD 21202
> Telephone:  (443) 615-7516
> Fax:  (443) 615-7599
> scorso@goldbergsegalla.com
> pmoleus@goldbergsegalla.com
> *Attorneys for Defendant, MV Transportation, Inc.*